IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ANNETTE BROWN,                                                                                        PLAINTIFF
o/b/o D.N., a minor

v.                                             Case No. 4:06-cv-4075

MICHAEL J. ASTRUE,[1] Commissioner
Social Security Administration                                                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Annette Brown, brings this action, on behalf of her son D.N. a minor, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her son's claims for a period of disability, and supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act).

**1. Procedural Background:**

Plaintiff protectively filed an application for SSI, on behalf of her son, D.N. a minor, on October 6, 1998, alleging an onset date of September 1, 1998. (Tr. 122-124).[2] Plaintiff's impairments included Attention Deficit Hyperactivity Disorder (ADHD), learning disorder, and asthma. Plaintiff's application was approved and her minor son, D.N., was found to be disabled as of the onset date. (Tr. 28). D.N.'s eligibility for benefits was subject to periodic review. *See* 20

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

1

C.F.R. § 416.994(a). The Commissioner found D.N. was no longer eligible as a disabled child for SSI payments on February 4, 2004. (Tr. 80). Pursuant to Plaintiff's request, a hearing before an Administrative Law Judge (ALJ) was held on February 1, 2006. The Plaintiff and D.N. were present and represented by counsel, Greg Giles, at the hearing. (Tr. 493-515). After considering all of the evidence of record, the ALJ rendered a decision on May 24, 2006, finding D.N. was not disabled and no longer eligible for SSI payments effective April 1, 2004. (Tr. 12-19). This date being the end of the second month after the month, in which the disability ceased. *See* 20 C.F.R. § 416.994a. The decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 15, 2006. (Tr. 5-7).

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2007); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine if a child is disabled and eligible for SSI benefits, the Commissioner will make a three-step sequential evaluation of the child's alleged impairments. *See* 20 C.F.R. § 416.924. First, the Commissioner will determine whether the child is engaged in a substantial gainful activity. *See* 20 C.F.R. § 416.924(b). If the child is not engaging in substantial gainful activity, the evaluation continues to step two where the Commissioner will determine whether the child's alleged impairment causes severe functional limitations. If the child's impairments, singularly or in combination, cause only minimal limitations, the Commissioner will not consider the impairments severe, and will find the child not disabled. *See* 20 C.F.R. § 416.924(c). If the child's impairments are severe, the Commissioner will evaluate them to determine whether they meet, medically equal, or functionally equal in severity a listed impairment. *See* 20 C.F.R. § 416.924(d). In order to functionally equal a listed impairment, the child's impairment must result in marked limitations in two domains of functioning, or an extreme limitation in one domain. *See* 20 C.F.R. § 416.926a(a). The relevant domains of functioning are: (1) Acquiring and Using Information; (2) Attending and

Completing Tasks; (3) Interacting and Relating With Others; (4) Moving About and Manipulating Objects; (5) Caring For Yourself; and (6) Health and Physical Well-being.  *See* 20 C.F.R. § 416.926a(b)(1).  If the child does not have an impairment or combination of impairments that medically meets or equals a listed impairment, or is functionally equal in severity to a listed impairment, the Commissioner will find the child not disabled.

**3.  Discussion:**

  The Plaintiff appealed the decision of the Commissioner finding her minor son not disabled. She claims substantial evidence does support the ALJ's decision that D.N. did not have an impairment that satisfied functional equivalence in the broad areas of development or functioning. The Defendant argues substantial evidence supports the ALJ's finding that D.N.'s condition had medically improved and as such, D.N. did not have an impairment functionally equal in severity to a listed impairment.

  The ALJ found D.N. did not have an impairment or combination of impairments that met a listed impairment, nor did D.N. have an impairment or combination of impairments that medically or functionally equaled a listed impairment. (Tr. 14-18).   I find substantial evidence supports the findings of the ALJ that D.N. is no longer under a disability as of April 1, 2004.

  **Functional Limitations**

  The initial finding that D.N. was disabled, and entitled to SSI benefits, was based on psychological testing performed in January 1999 that showed D.N. had mental retardation that met Appendix 1 Listing 112.05(E).  (Tr. 57).  Subsequent testing was performed on D.N. on November 20, 2001 and January 31, 2002.  (Tr. 352, 363).  These tests showed improvement in D.N.'s level

4

of functioning to the borderline to low-average range of intelligence. As a result of this improvement, a Disability Hearing Officer issued a decision on August 15, 2002 which found D.N. no longer met Appendix 1 Listing 112.05(E) for mental retardation. (Tr. 52-62). However, D.N.'s SSI payments were allowed to continue based on the Disability Hearing Officer's decision that D.N.'s ADHD brought about marked limitations in the domains of Attending and Completing Tasks, and Interacting and Relating to Others. (Tr. 52-62).

The ALJ, in his decision, found D.N. had a less than marked limitation in the domains of Acquiring and Using Information, Attending and Completing Tasks, and Interacting and Relating With Others, and no limitation in the domains of Moving About and Manipulating Objects, Caring for Ones' Self, and Health and Physical Well-Being. (Tr. 16-17). This decision was based on the ALJ finding D.N. had a "medical improvement". (Tr. 18). Medical improvement is defined as a decrease in the medical severity of the impairments present at the time of the most recent favorable medical decision that a claimant was disabled. *See* 20 C.F.R. § 416.994(b)(1). To determine medical improvement, the ALJ must compare the claimant's level of functioning at the present time with the level of functioning at the time of the most recent favorable disability award. *See* 20 C.F.R. § 416.994(b)(1). In this case, the date of the most recent favorable disability award was the August 15, 2002 decision of the Disability Hearing Officer.

In the decision of August 15, 2002, the Disability Hearing Officer based his finding that D.N. had marked limitations in the domains of Attending and Completing Tasks, and Interacting and Relating to Others, on Arkansas Counseling and Mental Health Center records covering the period from May 2001 through January 2002, (Tr. 435-436, 446-452, 453-465). The Disability Hearing Officer also reviewed a report from D.N.'s third grade teacher, Ms DeeAnn Belanger, dated March

8, 2002. (Tr. 169). Those records indicate that D.N. had difficulty sitting still in school, was constantly moving, and had trouble listening and keeping up with the class. (Tr. 169, 435-36, 446-465). An exam performed on January 31, 2002, by psychological examiner Becky Steel, M.S., found D.N.'s level of inattention and easy distraction, were so high that it was almost impossible to test him. (Tr. 369).

However, the record evidence before the ALJ showed D.N.'s ADHD was controlled with medication. A report from January 30, 2004, prepared by D.N.'s special education teacher, Ann Taaffe, indicated D.N. could function well in school when on his medication. (Tr. 248). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

The reports upon which Plaintiff relies to support her claims that D.N. is disabled, are from the time period for which D.N. was receiving SSI benefits. These reports do not relate to the period of time beginning April 1, 2004, the date the ALJ found medical improvement and, therefore, do not provide evidence to contradict the January 30, 2004 report upon which the ALJ relied.

Plaintiff further argues that records from D.N.'s teachers are evidence of a marked limitation of cognitive and social functioning of D.N. One such note which Plaintiff refers to is from Barbara Brown, D.N.'s Language and Social Studies teacher. (Tr. 193-194). The note indicates D.N. has problems with his class work and behavior. Ms. Brown's note is not dated, however, it appears in the record in connection with a school assessment from February 14, 2002 (Tr. 171), and notes from other teachers of D.N. dated March 8, 2002. (Tr. 169), and November 14, 2001. (Tr. 195, 196). Ms. Brown's note, as well as the notes from March 8, 2002 and November 14, 2001, are not

evidence of D.N.'s functioning on or after April 1, 2004, the date the ALJ found medical improvement.

Further evidence of improvement by D.N. is shown in the record from Living Hope dated February 23, 2005. (Tr. 478). This record indicates that D.N. had been making good grades the previous semester, but his grades had dropped just recently. (Tr. 478, 479). Ms. Southerland, D.N.'s school principal, reported D.N.'s behavior had improved over the years and that D.N. was back on his medicine. (Tr. 478). D.N. reported that he played on the football and basketball team, played X-box, and attended church. (Tr. 482). D.N. listed his three best friends, which included school principal, Ms. Southerland. (Tr. 482). Additional records from Living Hope, dated July 6, 2005 show Plaintiff indicated D.N. was doing well at school and was going to camp. (Tr. 487). Dr. Chester Jenkins with Living Hope, reported on September 23, 2005 that D.N. was doing well and making all C's in school. (Tr. 489). These records show that D.N. had improved his academic performance so that he was passing all of his classes, he was involved in activities such as going to camp and church, and was participating in social activities such as sports. (Tr. 482, 487, 488). These records support the ALJ's decision that D.N. did not have marked or extreme limitations in any functional domain, especially the domains of Attending and Completing Tasks, and Interacting and Relating to Others, which were the only two domains the Disability Hearing Officer found a marked limitation in his decision of August 15, 2002. (Tr. 52-62).

D.N.'s testimony at the hearing before the ALJ is supportive of a finding that D.N. did not have marked limitations in any of the six domains of functioning. D.N. testified he made C's in all his classes, which included life science, spelling and algebra and only failed geography. (Tr. 497, 498). He also indicated he was only in one special education class. (Tr. 497). D.N. testified he

7

participated with the school's football and basketball teams. (Tr. 498). D.N. also sang with his church choir. (Tr. 501).

Plaintiff testified at the hearing that D.N. was making D's in school. (Tr. 504). However, this testimony is contradicted by Plaintiff's report to Dr. Chester Jenkins of September 23, 2005. (Tr. 488). In this record, Plaintiff informed Dr. Jenkins D.N. was making all C's in school and was doing well. (Tr. 488). Plaintiff also testified that D.N. was disruptive in school and had no friends. (Tr. 507, 511). However, this testimony is contradicted by evidence in the record. D.N.'s special education teacher, Ann Taaffee, indicated in a January 30, 2004 school report that D.N. could function well in the classroom when taking his medication. (Tr. 248). D.N.'s school principle, Ms. Southerland, indicated in a February 23, 2005 report with Living Hope, that D.N.'s behavior had improved over the years. (Tr. 478). Also, a record of Dr. Chester Jenkins from July 6, 2005 indicates D.N. was doing well in school and was going to camp. (Tr. 487).

### 4. Conclusion:

The Court has reviewed all of the relevant medical records and briefing in this case. After a careful review of the entire record, this Court finds there is substantial evidence to support the decision of the ALJ. Accordingly, the Commissioner's decision should be affirmed, and the Plaintiff's complaint dismissed with prejudice. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED** this **3rd day of August, 2007.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE